E-FILED
Tuesday, 05 January, 2021  07:13:01 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| ERIC GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01322-JBM-JEH |
| | ) | |
| WEEK TELEVISION, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
### RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, ERIC GREENE, by and through his attorneys, WILLIAM W.P. ATKINS and the law firm of JOHNSON, BUNCE & NOBLE, P.C., and respectfully submits to this Court the following Memorandum of Law in support of Plaintiff's Response to Defendant's Motion for Summary Judgment.

### I.      INTRODUCTION

Plaintiff Eric Greene was a television news anchor employed by Defendant WEEK Television, Inc. He was hired in 2013 and performed his duties for Defendant very well, having his contract renewed in March of 2016. Perry Boxx became Mr. Greene's supervisor in June of 2016. This is when the problems started.

Mr. Boxx was antagonistic to Mr. Greene immediately, regularly making disparaging comments to Mr. Greene. Eventually, Mr. Greene confronted Mr. Boxx and the disparaging comments were curtailed, but Mr. Boxx was not done with Mr. Greene. Mr. Boxx proceeded to deride the suggestions made by Mr. Greene for news stories related to his Jewish heritage, dismissing Mr. Greene's heritage on one occasion, with the comment "The world has had enough Holocaust documentaries." Additionally, Mr. Boxx's attitude toward Judaism led to disciplinary actions against Mr. Greene for minor matters undeserving of discipline. Eventually, Mr. Boxx even used Mr. DeSantis as his "cat's paw" to terminate Mr. Greene.

Although Mr. DeSantis did not appear to have an anti-Semitic bias himself, he

1

went along with the termination of Mr. Greene's employment for his own improper and illegal reasons. Mr. DeSantis was engaged in a plan to eliminate the older on air talent working for WEEK at that time so terminating an anchorman in his 50's dovetailed with his own intentions. In close proximity to the termination of Mr. Greene, Mr. DeSantis also terminated the on air employment of 3 other WEEK employees who were over 40. Mr. Greene was then replaced by an individual who was under 40, further demonstration of Defendant's intentional age discrimination.

## II.     RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Week Television, Inc. operates two television stations-WEEK (an NBC affiliate) and HOI (an ABC affiliate)-both out of the same building in Peoria, Illinois. (Ex. 1, Schulz Decl. ¶3.)

Plaintiff agrees that the facts stated in Paragraph II.1 of Defendant's Motion for Summary Judgment are undisputed.

2.     Greene was born in 1956 and identifies as Jewish for both his race and religious affiliation. (Ex. 2, Greene Dep. 15:18-20, 132:21-23.)

Plaintiff agrees that the facts stated in Paragraph II.2 of Defendant's Motion for Summary Judgment are undisputed.

3.     At all relevant times, Mark DeSantis was General Manager of Week Television, Inc. and oversees the operations of both WEEK and HOI. (Ex. 3, DeSantis Dep. 8:2-6.)

Plaintiff agrees that the facts stated in Paragraph II.3 of Defendant's Motion for Summary Judgment are undisputed.

4.     As General Manager, DeSantis has the ultimate authority on personnel decisions, and any decisions to hire or fire employees require DeSanti's express approval. (Ex. 3, DeSantis Dep. 13:20-14:3.)

Plaintiff agrees that the facts stated in Paragraph II.4 of Defendant's Motion for Summary Judgment are undisputed.

5.     DeSantis oversees nine (9) department heads, and approximately eighty-five (85) employees. (Ex. 3, DeSantis Dep. 15:12-18.)

Plaintiff agrees that the facts stated in Paragraph II.5 of Defendant's Motion for Summary Judgment are undisputed.

6.      Greene was considered for employment with WEEK Television, Inc. after reaching out to DeSantis and expressing his interest in a news anchor position. (Ex. 2, Greene Dep. 44:4-22.)

Plaintiff agrees that the facts stated in Paragraph II.6 of Defendant's Motion for Summary Judgment are undisputed.

7.      On March 11, 2013, with DeSanti's approval, WEEK hired Greene to be a weeknight News Anchor on HOI. (Complaint, ¶¶ 9, 11; Answer, ¶ 9, 11; Ex. 2, Greene Dep 44:4-22; Ex. 3, DeSantis Dep. 20:4-19.)

Plaintiff agrees that the facts stated in Paragraph II.7 of Defendant's Motion for Summary Judgment are undisputed.

8.      At the time of his hire with WEEK Television, Greene was fifty-six (56) years old. (Ex. 2, Greene Dep. 167:16-24.)

Plaintiff agrees that the facts stated in Paragraph II.8 of Defendant's Motion for Summary Judgment are undisputed.

9.      Greene's immediate supervisor when he started with WEEK in 2013 was News Director Greg Schieferstein. (Ex. 2, Greene Dep. 75:10-17, 78:18-21.)

Plaintiff agrees that the facts stated in Paragraph II.9 of Defendant's Motion for Summary Judgment are undisputed.

10.      Greene was aware of WEEK's Employee Handbook and its express provisions barring any workplace discrimination or harassment applicable during his employment. (Ex. 2, Greene Dep 50:22-25, 54:11-57:24.)

Plaintiff agrees that the facts stated in Paragraph II.10 of Defendant's Motion for Summary Judgment are undisputed.

11.      Greene was also aware of, and received a copy of, WEEK's Equal Employment Opportunity policy in effect during his employment which provides that it is an equal opportunity employer and conducts all employment practices "in a manner which does not discriminate on the basis of race, color, religion, sex, age, sexual orientation, national origin, disability, or any other legally protected status

3

under federal, state or local law," and instructs employees to contact WEEK's EEO Coordinator if they believe they have been the victim of harassment or discrimination. (Ex. 2, Greene Dep. 52:11-53:17; Greene Dep. Ex. 1; Ex. 3, DeSantis Dep. 22:19-23:5.)

Plaintiff agrees that the facts stated in Paragraph II.11 of Defendant's Motion for Summary Judgment are undisputed.

12.    Greene additionally was familiar with WEEK's Anti-Harassment policy in effect during his employment which states that WEEK "will not tolerate any form of harassment or intimidation because of race, color, religion, national origin, sex, disability, sexual orientation, age or any other classification protected by law," and that "any form of sexual harassment violates company policy." Greene was also aware that this policy provided contact information for WEEK's EEO Coordinator to report incidents of harassment. (Ex. 2, Greene Dep. 54:11-57:3; Greene Dep. Ex. 2; Ex. 3, DeSantis Dep. 24:8-16.)

Plaintiff agrees that the facts stated in Paragraph II.12 of Defendant's Motion for Summary Judgment are undisputed.

13.    Week also maintains an Employee conduct policy in its handbook requiring employees to be "pleasant, professional, respectful, and cooperative" and that "swearing and profanity is offensive and is not acceptable behavior." (Ex. 2, Greene Dep. 57:6-24; Greene Dep. Ex. 3.)

Plaintiff agrees that the facts stated in Paragraph II.13 of Defendant's Motion for Summary Judgment are undisputed.

14.    At the time of his hire, Greene signed a three (3)-year contract with WEEK as an Anchor/Reporter commencing on March 11, 2013 and ending on March 10, 2016. (Ex. 2, Greene Dep. 80:21-82:6; Greene Dep. Ex. 5.)

Plaintiff agrees that the facts stated in Paragraph II.14 of Defendant's Motion for Summary Judgment are undisputed.

15.    As an Anchor and Reporter, Greene was an on-air performer for the station, responsible for anchoring afternoon and evening newscasts at WEEK, as well as ancillary production duties. (Ex. 2, Greene Dep. 59:18-60:10.)

Plaintiff agrees that the facts stated in Paragraph II.15 of Defendant's Motion for Summary Judgment are undisputed.

16.    In November 2015, Quincy Media, Inc. ("Quincy") purchased WEEK. (Ex. 3, DeSantis Dep. 21:24-22:2.)

Plaintiff agrees that the facts stated in Paragraph II.16 of Defendant's Motion for Summary Judgment are undisputed.

17.    Following the acquisition, WEEK renewed Greene's contract for a two-year period commencing on March 11, 2016 and ending on March 10, 2018. (Ex. 2, Greene Dep. 58:8-60:4, 82:7-10; Greene Dep. Ex. 4; Ex. 3, DeSantis Dep. 24:17-25:8.)

Plaintiff agrees that the facts stated in Paragraph II.17 of Defendant's Motion for Summary Judgment are undisputed.

18.    Mark DeSantis, Regional Vice President Jerry Watson, and Human Resources Director Jena Schulz all approved Greene's 2016-2018 contract. (Ex. 3, DeSantis Dep. 25:6-21.)

Plaintiff agrees that the facts stated in Paragraph II.18 of Defendant's Motion for Summary Judgment are undisputed.

19.    As an anchor, Greene was a member of the SAG-AFTRA Union, which represents television and film actors, journalists, and artists. (Ex. 2, Greene Dep. 104:19-105:4.)

Plaintiff agrees that the facts stated in Paragraph II.19 of Defendant's Motion for Summary Judgment are undisputed.

20.    During 2016 and 2017, Greene was the Anchor for HOI's 5:30 p.m. and 10:00 p.m. newscasts. (Ex. 2, Greene Dep. 68:4-13.)

Plaintiff agrees that the facts stated in Paragraph II.20 of Defendant's Motion for Summary Judgment are undisputed.

21.    Perry Boxx became Greene's immediate supervisor when he replaced Schieferstein as the News Director in approximately June 2016. (Ex. 2, Greene Dep. 75:10-17, 78:15-21; Ex. 3, DeSantis Dep. 34:15-21.)

Plaintiff agrees that the facts stated in Paragraph II.21 of Defendant's Motion for Summary Judgment are undisputed.

22.    Greene's regular work schedule in 2016 and 2017 was Monday through Friday, starting around 1:30 p.m. and ending by 11 p.m., following the 10 p.m. newscast. (Ex. 2, Greene Dep. 69:8-16, 73:22-74:5.)

Plaintiff agrees that the facts stated in Paragraph II.22 of Defendant's Motion for Summary Judgment are undisputed.

23.    As the News Director, Perry Boxx's work hours were approximately 8:30 a.m. to 6 p.m. each day. (Ex. 2, Greene Dep. 78:22-79:3.)

Plaintiff agrees that the facts stated in Paragraph II.23 of Defendant's Motion for Summary Judgment are undisputed.

24.    Vice President and General Manager Mark DeSantis supervised all employees at WEEK/HOI, and all department heads reported directly to DeSantis, including Boxx. (Ex. 2, Greene Dep. 79:6-19; Ex. 3, DeSantis Dep. 15:12-18.)

Plaintiff agrees that the facts stated in Paragraph II.24 of Defendant's Motion for Summary Judgment are undisputed.

25.    In Greene's March 2, 2016 performance review, his supervisor noted that "[t]here were some issues with other employees regarding comments he had made," which Greene described as a female reporter "shooting a computer screen with her camera... I had been listening to WBBM radio and they were talking about a cyber porn story, and so I had that on my mind.... And I asked her if it was porn because I thought maybe she was doing a porn story, and she complained that I was talking about porn." (Ex. 2, Greene Dep. 97:17-98:15, Greene Dep. Ex. 7.)

Plaintiff agrees that the facts stated in Paragraph II.25 of Defendant's Motion for Summary Judgment are undisputed.

26.    That March 2016 performance review admonished Greene to avoid "comments or language perceived as negative by other employees or members of the public," including the porn comment made to the female reporter and using curse words. (Ex. 2, Greene Dep. 102:1-14, Greene Dep. Ex. 7.)

Plaintiff agrees that the facts stated in Paragraph II.26 of Defendant's Motion for Summary Judgment are undisputed.

27.    On August 31, 2016, WEEK issued Greene a written warning for

unprofessional conduct, including using "angry profanity and expletives" in the workplace. (Greene Dep. Ex. 8.)

Plaintiff agrees that the discipline was given as stated in Paragraph II.27 of Defendant's Motion for Summary Judgment but disputes the seriousness of the conduct as explained in ¶ 29 below.

28.   The August 2016 written discipline warned Greene that his conduct was in violation of WEEK's Anti-Harassment and Employee Conduct policies, and that further incidents would "result in serious corrective and disciplinary action up to and including dismissal." (Ex. 2, Greene Dep. 114:9-19, Greene Dep. Ex. 8.)

Plaintiff agrees that the facts stated in Paragraph II.28 of Defendant's Motion for Summary Judgment are undisputed.

29.   Greene admits that the incident underlying the August 2016 written discipline occurred, stating that "I was angry…. I had a bad evening," and that he used profanity and expletives (though he claims that the profanity and expletives were not directed at anyone and were borne out of frustration with the technical difficulties). (Ex. 2, Greene Dep. 110:8-111:19.)

Plaintiff agrees that the facts stated in Paragraph II.29 of Defendant's Motion for Summary Judgment are undisputed.

30.   Greene acknowledges that he received a copy of the August 2016 written discipline, that the warning was serious, and that it was clear that "[t]hey meant business, certainly." (Ex. 2, Greene Dep. 114:15-17.)

Plaintiff agrees that the facts stated in Paragraph II.30 of Defendant's Motion for Summary Judgment are undisputed.

31.   On March 23, 2017, WEEK issued Greene a written warning after he "launched into a loud tirade at those in the control room" about technical difficulties during the newscast. (Ex. 2, Greene Dep. 115:1-23, Greene Dep. Ex. 9; Ex. 3, DeSantis Dep. 47:7-16.)

Plaintiff agrees that the warning was given but disputes that it accurately recounts what occurred. The more accurate account is given in ¶ 33 below and citations therein.

7

32.     The March 2017 discipline described Greene's behavior on March 22, 2017 as "explosive," as well as "loud, bullying, rude, intimidating and unprofessional." (Greene Dep. Ex. 9.)

Plaintiff agrees that the discipline document describes Plaintiff's behavior as quoted, but disputes that it is an accurate description as explained in ¶ 33 below and citations therein.

33.     Greene questions that his conduct was a "tirade" but admits that he was "upset" and that the March 22, 2017 incident behind the March 2017 discipline occurred, as well as that he was very frustrated after his supervisor told him to "chill," and that he said "I guess I don't produce this newscast anymore." (Ex. 2, Greene Dep. 115:17-116:24, Greene Dep. Ex. 9.)

Plaintiff agrees that the facts stated in Paragraph II.33 of Defendant's Motion for Summary Judgment are undisputed.

34.     Following the March 22 incident, Greene met with Boxx and Assistant News Director Allison Gibson to discuss Greene's unprofessional conduct on that day. (Ex. 2, Greene Dep. 115:17-116:9, Greene Dep. Ex. 9; Ex. 3, DeSantis Dep. 47:18-48:6.)

Plaintiff agrees that the facts stated in Paragraph II.34 of Defendant's Motion for Summary Judgment are undisputed.

35.     The March 22, 2017 discipline stated that it was a "final warning" and that "[a]nother incident will result in serious disciplinary action, up to and including dismissal." (Ex. 2, Greene Dep. 117:25-118:7, Greene Dep. Ex. 9; Ex. 3, DeSantis Dep. 46:18-48:15.)

Plaintiff agrees that the facts stated in Paragraph II.35 of Defendant's Motion for Summary Judgment are undisputed.

36.     Greene admits that he is "not disputing" that these incidents occurred and that there were instances where he could have been more professional in the workplace, including situations where he would get frustrated at work and use profanity in the newsroom where others could hear. (Ex. 2, Greene Dep. 102:12-25, 115:11-117:24, 118:25-119:7.)

8

Plaintiff agrees that he is not disputing that the referenced incidents occurred but disputes the characterization of the seriousness of the incidents as is clear in the deposition cited by Defendant.

37.     DeSantis was aware of the discipline meted out to Greene and had reviewed the disciplinary warnings from August 2016 and March 2017 before they were administered. (Ex. 3, DeSantis Dep. 43:13-19, 46:3-47:6, DeSantis Dep. Exs. 8-9.)

Plaintiff agrees that the facts stated in Paragraph II.37 of Defendant's Motion for Summary Judgment are undisputed.

38.     On Friday, May 19, 2017, Greene observed WEEK's Human Resources Manager Teddi Stonesifer with wet clothing, and she stated, "the hose attacked me," and Greene stated to Stonesifer, "oh, did they [the hoes] come to you-the corner[?] Were they on the corner?" (Ex. 2, Greene Dep. 119:14-22, 120:12-22, 124:13-15.)

Plaintiff agrees that the facts stated in Paragraph II.38 of Defendant's Motion for Summary Judgment are undisputed.

39.     Greene admits that his May 19 comment to Stonesifer was said "stupidly" and was "not a great joke…." (Ex. 2, Greene Dep. 120:12-22.)

Plaintiff agrees that the facts stated in Paragraph II.39 of Defendant's Motion for Summary Judgment are undisputed.

40.     Teddi Stonesifer reported the incident to WEEK, and WEEK initiated an investigation into her complaint about Greene's behavior on May 19. (Ex. 1, Schulz Decl. at ¶8.)

Plaintiff agrees that the facts stated in Paragraph II.40 of Defendant's Motion for Summary Judgment are undisputed.

41.     Teddi Stonesifer reported to WEEK that Greene asked her, "Why were you fighting with the ho[e]s, were you trying to take over their corner?" during the exchange on May 19. (Ex. 1, Schulz Decl. at ¶ 6; Ex. 3, DeSantis Dep. 50:5-17.)

Plaintiff agrees that Ms. Stonesifer reported to Defendant as stated but

disputes that his statement was accurately reported as it conflicts with his account in ¶ 38 above which gives his account of what was said.

42.    During WEEK's investigation into the incident, Stonesifer described putting her hand up in a silent gesture for Greene to stop his comments, and that Greene made a second comment referring to "hoes" notwithstanding her body language for him to stop. (Ex. 1, Schulz Decl. at ¶¶ 9-10; Ex. 3, DeSantis Dep. 50:5-21.)

Plaintiff disputes the allegation that Ms. Stonesifer put her hand up and the alleged second comment. (Plaintiff's Ex. 1, Greene Dep. 123:14-20.)

43.    DeSantis recalls Stonesifer being "devastated" and "crying and very upset" when she reported the May 19 incident with Greene to him immediately following the exchange. (Ex. 3, DeSantis Dep. 49:23-50:4, 51:9-20.)

Plaintiff agrees that DeSantis related that recollection but disputes its accuracy as his only notice of her being upset was that he was fired. (Plaintiff's Ex. 1, Greene Dep. 120:12-22, 126:11-20.)

44.    Stonesifer reported to Schulz during the investigation that "being referred to as a 'ho' or a prostitute in the newsroom in from of many co-workers was to say the least very embarrassing. But more than that as a Department Head Manager, I felt very undermined and felt that he was not only disrespecting me as a human being, but as a manager of this company." (Ex. 1, Schulz Decl. ¶ 9.)

Plaintiff agrees that was stated by Stonesifer but denies that he referred to her as a "ho" or a prostitute. (Plaintiff's Ex. 1, Greene Dep. 123:14-20.)

45.    Stonesifer felt that Greene's conduct was harassment and she expressed that perception to Schulz and DeSantis during WEEK's investigation into the May 19 incident. (Ex. 1, Schulz Decl. ¶ 7; Ex. 3, DeSantis Dep. 56:11-13.)

Plaintiff agrees that the facts stated in Paragraph II.45 of Defendant's Motion for Summary Judgment are undisputed.

46.    During WEEK's investigation into the incident, news anchor Tyler Lopez corroborated Stonesifer's version of the facts, including Greene's use of the word "hoes" directed to Stonesifer and Stonesifer holding her hand up for Greene to stop. (Ex. 1, Schulz Decl. ¶ 8; Ex. 3, DeSantis Dep. 52:3-53:6.)

Plaintiff agrees that the facts stated in Paragraph II.46 of Defendant's Motion for Summary Judgment are undisputed.

47.    Greene acknowledges that Lopez observed the incident and was questioned during the investigation, and that "he was right to tell them [management]…." (Ex. 2, Greene Dep. 121:12-21.)

Plaintiff agrees that the facts stated in Paragraph II.47 of Defendant's Motion for Summary Judgment are undisputed.

48.    While Greene characterizes the dialogue on May 19 somewhat differently, he admits that he jokingly referred to females as prostitutes, *i.e.*, a play on the word "hose" to refer to "hoes." (Ex. 2, Greene Dep. 122:10-23.)

Plaintiff agrees that the facts stated in Paragraph II.48 of Defendant's Motion for Summary Judgment are undisputed although the cited evidence makes clear that he was not referring to Stonesifer as a prostitute or a ho.

49.    Greene acknowledges that his May 19 comment "upset" Stonesifer. (Ex. 2, Greene Dep. 120:12-22, 126:11-20.)

Plaintiff agrees that the facts stated in Paragraph II.49 of Defendant's Motion for Summary Judgment are undisputed.

50.    A short time after his May 19 comment to Stonesifer, Greene stated to others in the newsroom (which Stonesifer may have heard) that "I tend to turn jokes

11

into sex jokes." (Ex. 2, Greene Dep. 123:21-125:18.)

Plaintiff disputes the implication that this comment was directly related to the discussion with Stonesifer as he was relating an interview for a prior position in San Francisco. (Plaintiff's Ex. 1, Greene Dep. 122:1-9, 123:1-9)

51.    The decision-makers in Greene's termination were Mark DeSantis, Jerry Watson, and Jena Schulz. (Ex. 3, DeSantis Dep. 54:18-55:1.)

Plaintiff agrees that those individuals were the ultimate decision makers but disputes that they were the only ones involved in the decision. Mr. DeSantis testified to Perry Boxx being involved in the investigation and supportive of the decision to terminate. (Plaintiff's Ex. 2, DeSantis Dep. 52:10-22; 55:8-56:19.)

52.    Jena Schulz, as the Director of Human Resources guided the investigation into Stonesifer's allegations of harassment against Greene, including obtaining a written statement from Stonesifer. (Ex. 1, Schulz Decl. ¶¶ 8-9.)

Plaintiff agrees that the facts stated in Paragraph II.52 of Defendant's Motion for Summary Judgment are undisputed.

53.    WEEK considered termination for this May 19 incident to be warranted given the "egregious behavior that was displayed in the newsroom against Teddi Stonesifer" and prior disciplinary warning for Greene for inappropriate workplace conduct. (Ex. 1, Schulz Aff. ¶ 17; Ex. 3, DeSantis Dep. 49:18-22.)

Plaintiff agrees that WEEK terminated his employment but disputes it was due to this incident as he believes it was either due to him being Jewish or over 40. (Plaintiff's Ex. 1, Greene Dep. 121:22-25.)

54.    Boxx was "kept in the loop" and was supportive of the termination decision but was not a decision-maker in the termination. (Ex. 3, DeSantis Dep. 54:18-55:1, 55:12-18, 56:9-16.)

Plaintiff agrees that the facts stated in Paragraph II.54 of Defendant's Motion for Summary Judgment are undisputed as to Boxx being a final decision-maker but believes Boxx's acknowledged involvement allowed him to influence the decision. (Plaintiff's Ex. 2, DeSantis Dep. 52:10-22; 55:8-56:19.)

55.     The decision-makers in Greene's termination are all over forty (40) years old. (Ex. 1, Schulz Decl. ¶ 16; Ex. 2, Greene Dep. 129:25-130:11.)

Plaintiff agrees that the facts stated in Paragraph II.55 of Defendant's Motion for Summary Judgment are undisputed.

56.     Greene did not regularly discuss being Jewish while in the workplace and does not recall ever specifically telling Boxx that he was Jewish. (Ex. 2, Greene Dep. 184:23-185:15.)

Plaintiff agrees that the facts stated in Paragraph II.56 of Defendant's Motion for Summary Judgment are undisputed.

57.     Greene says that his religious practices "never was a discussion" at work. (Ex. 2, Greene Dep. 183:22-184:2.)

Plaintiff agrees that the facts stated in Paragraph II.57 of Defendant's Motion for Summary Judgment are undisputed.

58.     Greene did state, however, that he was able to use his perspective as a man of Jewish faith and heritage to contribute to conversations on topics like the Middle East. (Ex. 2, Greene Dep. 136:8-21, 185:2-10.)

Plaintiff agrees that the facts stated in Paragraph II.58 of Defendant's Motion for Summary Judgment are undisputed.

59.     Greene alleges there were two instances where Boxx rejected news stories related to his religion, in that Boxx declined to do a story on Passover, stating, "no, we don't need to do that," and Boxx "shot down" a story about the Trump

administration's "anti-Semitism events." (Ex. 2, Greene Dep. 139:15-21, 141:1-4.)

Plaintiff agrees that the facts stated in Paragraph II.59 of Defendant's Motion for Summary Judgment are undisputed.

60.    Greene found Boxx's unwillingness to approve the story on the Trump administration's "anti-Semitism events." to be "very suspicious" and "nobody could figure out why he was against it." (Ex. 2, Greene Dep. 150:23-151:25.)

Plaintiff agrees that the facts stated in Paragraph II.60 of Defendant's Motion for Summary Judgment are undisputed.

61.    Either the News Director or the assignment team could approve or reject a story proposal, and when these stories were proposed by Greene, the news team (including producers and reporters) was assembled at a typical afternoon editorial meeting. (Ex. 2, Greene Dep. 87:1-22, 145:1-25.)

Plaintiff agrees that the facts stated in Paragraph II.61 of Defendant's Motion for Summary Judgment are undisputed.

62.    News stories proposed by Greene· and stories proposed by his peers· were rejected by Boxx on other occasions, and under prior News Director Greg Schieferstein, Greene recalls "the story ideas that I came up with were just kind of sloughed off, for whatever reason.... Sometimes they use my ideas, sometimes·a lot of times they didn't...." (Ex. 2, Greene Dep. 87:1-18, 179:12-180:17.)

Plaintiff agrees that the facts stated in Paragraph II.62 of Defendant's Motion for Summary Judgment are undisputed.

63.    The HOI newscasts Greene anchored were intended to be focused on the local news, absent critical breaking national news, and prior to his proposed story on the Trump administration, Greene had received feedback directing him to focus on local stories as opposed to national news. (Ex. 2, Greene Dep. 90:16-20, 99:20-100:13.)

Plaintiff agrees that the facts stated in Paragraph II.63 of Defendant's Motion for Summary Judgment are undisputed.

64.   Greene also recalls a situation where he suggested that Boxx review a Holocaust documentary, and Boxx allegedly responded, "I think the world has had enough Holocaust Documentaries." (Ex. 2, Greene Dep. 140:6-23.)

Plaintiff agrees that the facts stated in Paragraph II.64 of Defendant's Motion for Summary Judgment are undisputed.

65.   Greene further alleges that he told both Boxx and DeSantis about genetic resting results, and that his heritage was confirmed to be Jewish, and that Boxx responded, "That's not a surprise." (Ex. 2, Greene Dep. 153:5-25.)

Plaintiff agrees that the facts stated in Paragraph II.65 of Defendant's Motion for Summary Judgment are undisputed.

66.   Greene alleges that DeSantis made one comment directed to him being Jewish; specifically, "can I ask you something as a Jew? Well, I know he meant nothing by it because people don't…. I don't even remember what it was about." (Ex. 2, Greene Dep. 143:3-144:9.)

Plaintiff agrees that the facts stated in Paragraph II.66 of Defendant's Motion for Summary Judgment are undisputed.

67.   Other than these comments or issues identified with Boxx and the single comment from DeSantis , there were no other instances of conduct that relate to race or religion that Greene takes issue with in this case. (Ex. 2, Greene Dep. 154:2-18.)

Plaintiff agrees that the facts stated in Paragraph II.67 of Defendant's Motion for Summary Judgment are undisputed to the extent that there were no other overt references to race or religion but Plaintiff believes that was the motivation for Boxx's treatment of him. (Plaintiff's Ex. 1, Greene Dep. 137:23-154:10.)

68. There is no documentary evidence that relates to Greene's case; it is supported by his own recollection of events in the workplace. (Ex. 2, Greene Dep. 157:2-21.)

Plaintiff agrees that the facts stated in Paragraph II.68 of Defendant's Motion for Summary Judgment are undisputed as to documents directly evidencing discriminatory intent. Numerous documents support aspects of Mr. Greene's case, including his contracts, and the termination letter showing employment and adverse action, respectively. (Greene, Exhibits 4 and 10.)

69. Greene's basis for his belief that he was subjected to age discrimination is the fact that he was replaced by a younger employee. (Ex. 2, Greene Dep. 166:17-167:2, 171:19-172:1.)

Plaintiff agrees that the facts stated in Paragraph II.69 of Defendant's Motion for Summary Judgment are undisputed although he was replaced by two employees who were both younger than him. (Plaintiff's Ex. 2, DeSantis Dep. 63:1-19.)

70. WEEK hired Karl Mandik, who was under the age of forty (40), to be the evening news anchor following Greene's termination. (Ex. 1, Schulz Decl. ¶ 18; Ex. 3, DeSantis Dep. 63:1-12.)

Plaintiff agrees that the facts stated in Paragraph II.70 of Defendant's Motion for Summary Judgment are undisputed.

71. Mandik engaged in misconduct during his employment with WEEK and was subsequently, like Greene, discharged for that misconduct. (Ex. 1, Schulz Decl. ¶ 18; Ex. 2, Greene Dep. 171:9-12.)

Plaintiff agrees that the facts stated in Paragraph II.71 of Defendant's Motion for Summary Judgment are undisputed.

72. Greene believed that he was slated for termination once Quincy took

16

over because he "had a little bit of history with them" in that Quincy terminated his employment after female complained about comments he made to them, which they perceived to be "sexually inappropriate." (Ex. 2, Greene Dep. 174:1-176:7, 178:2-10.)

Plaintiff agrees that the facts stated in Paragraph II.72 of Defendant's Motion for Summary Judgment are undisputed.

73.    Greene characterizes his performance as a news anchor for WEEK in 2016 and though his termination in May 2017 as "really good" and that he delivered a consistent performance throughout that time period and rarely missed work. (Ex. 2, Greene Dep. 84:17-85:19.)

Plaintiff agrees that the facts stated in Paragraph II.73 of Defendant's Motion for Summary Judgment are undisputed.

74.    As to the alleged comments by Boxx, Greene was able to report to work each day and "didn't think about it." (Ex. 2, Greene Dep. 186:2-24.)

Plaintiff agrees that the facts stated in Paragraph II.74 of Defendant's Motion for Summary Judgment are undisputed.

75.    Greene was advised on May 23, 2017 that his employment was being terminated based on the incident with Stonesifer. (Ex. 2, Greene Dep. 126:12-127:7.)

Plaintiff agrees that the facts stated in Paragraph II.75 of Defendant's Motion for Summary Judgment are undisputed.

## III.    ARGUMENT

### A.    Summary Judgment Standard

The summary judgment is articulated in Federal Rules of Civil Procedure Rule 56(a), which states, "A party may move for summary judgment, identifying each claim or defense-on which summary judgment is sought. The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." The U.S. Supreme Court has long held that the Court must view the record in all inferences to be drawn from it in the light most favorable to the non-moving party, the Plaintiff Eric Greene in this case. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). More recently, the Seventh Circuit has repeatedly admonished trial courts that, "the summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sorsha v. Sears, Roebuck & Co.*, 3F3d 1035, 1038 (1993); *Robinson v. PPG Indus., Inc.*, 53 F3d 1159, 1162 (1994); and *Courtney v. Biosound, Inc.*, 42 F3d 414, 418. Finally, although Defendant correctly points out that Plaintiff as the non-moving party must point to evidence showing a dispute of material fact to defeat summary judgment, he only needs to "produce evidence from which a rational fact-finder could infer that the company's proffered reasons were pretextual." *Courtney* at 418. Clearly, this standard does not require that Plaintiff show that a jury could <u>only</u> rule in his favor but, as stated by the Court, only that a jury <u>could</u> make such an inference in his favor.

### B.    Greene Has Established Viable Claims of Discrimination

#### 1.    Legal Standards for Discrimination Claims

Plaintiff has adequately stated the legal standards for ADEA and TITLE VII claims, including the *McDonnell Douglas* burden-shifting framework first articulated in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). Of course, the more important standard is the one articulated in *Ortiz v. Werner Enters., Inc.*, 834 F3d 760, 765 (7th Cir. 2016) which is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action. Under this standard, Mr. Greene has shown a prima facie case of discrimination as to each count and has presented evidence sufficient for a jury to find that Defendant's

proffered reasons for his termination were pretextual.

## 2.   Greene's Prima Facie Case of Discrimination

Mr. Greene's allegations are supported by his own testimony, various pieces of documentary evidence, and the admissions of the Defendant. First, Mr. Greene is a member of each protected class mentioned in his Complaint. As Defendant acknowledges, Mr. Greene was born in 1956 making him older than 40 at all relevant times for this case. Defendant's Statement of Undisputed Material Facts (Hereafter referred to as SOF) ¶ 2. As Defendant also acknowledges, Mr. Greene identifies as Jewish in terms of race and religion. (SOF ¶ 2)

Second, Mr. Greene was meeting WEEK's legitimate expectations as shown by the March 2, 2016 performance evaluation signed by Mark DeSantis on March 3, 2016. According to the evaluation, Mr. Greene was Very Good in Job Knowledge, Organizational Skills and Productivity, Communication Skills, and Adaptability. The only two areas of performance ranked less than Very Good were Interpersonal Skills and Professionalism, and Problem Solving and Decision Making, which were both marked Solid Performer. He did not receive the mark of Needs Improvement in any category. As explained on the evaluation form, "Solid Performer" means that he "consistently meets objectives" while "Very Good Performer" means that he "consistently meets, and often exceeds, objectives." (Greene Dep. Ex. 7.) This was the most recent evaluation of Mr. Greene and his testimony was that he performed well throughout his employment. (SOF ¶ 73) Notably, this evaluation was given prior to Mr. Boxx becoming Mr. Greene's supervisor in June of 2016. (SOF ¶ 21)

This evaluation is particularly relevant for what it doesn't show. The lowest category of "Needs Improvement" refers to an employee who "sometimes or often fails to meet objectives." Clearly, Mr. Greene's comment about porn referenced in SOF ¶ 25 was not an issue sufficient to result in discipline or Defendant would have articulated that such occurred, but it also was not serious enough to be considered even sometimes not failing to meet objectives or there would have been a notation to

that effect on this evaluation, but there is not such notation. Additionally, the use of curse words was apparently referred to in the phrase "comments or *language* (emphasis added) perceived as negative," yet there is still no failure to meet objectives regarding use of curse words. The clear implication of this evaluation is that while negative comments (sexual jokes for instance) or language (curse words) are not encouraged behavior, they are also not disciplinable or even in the context of Mr. Greene's performance, considered worthy of downgrading an employee's evaluation. Not only was Mr. Greene not given a Needs Improvement notation, he was even cited as a Very Good Performer overall in this evaluation.

The only problems in Mr. Greene's performance cited by Defendant are these same two categories of behavior, sexual jokes and use of curse words. Although not a serious problem in March of 2016, these items were suddenly matters for serious discipline by August of 2016 when Mr. Greene used curse words during what must have been a supremely frustrating situation during a broadcast. (SOF ¶ 29 and Greene Dep. Ex. 8.) Expressing his frustration, resulted in a disciplinary written warning. A similar occurrence in March of 2017 where he had no information as to the technical issues in a newscast and was forced to cut to commercial to salvage the program. resulted in a "final warning" discipline letter even though he handled the situation commendably. (SOF ¶ 32 and 33) Both of these disciplines were brought to the attention of Mr. DeSantis who allowed them to proceed despite the contradictory treatment of these kinds of behavior in an employee evaluation he had previously signed in March of 2016. Defendant was presented no evidence of any policy change to explain this change in the expectations of Defendant's employees. The only change apparent in the records is that Perry Boxx became Mr. Greene's supervisor.

Looking at the final incident which Defendant claims as the basis for terminating Mr. Greene's employment, the parties do not agree on what occurred. Mr. Greene testified that after Ms. Stonesifer stated, "The hose attacked me," he said "oh, did they come to your-the corner? Were they on the corner?" While this is admittedly not a very funny joke, it is certainly not insulting to Ms. Stonesifer as her account

relates. Further, when asked about the incident, Mr. Greene pointed out that he knew Ms. Stonesifer was upset, but only because he was terminated, not through observing any signs of emotional turmoil at the time of the conversation. Regarding her claim that she raised her hand for him to stop (tacitly acknowledging that she did not verbally ask him to stop) Mr. Greene does not remember her raising her hand. As to the alleged continuing comments, Mr. Greene vehemently denies saying anything else at that time after the single comment recounted above. Mr. Greene admits to making a comment about turning jokes into sexual jokes, after the discussion with Ms. Stonesifer when he was talking with others in the newsroom, not directed to her as her statement implies.

Another notable discrepancy between Ms. Stonesifer's description of events and the investigation as described by Mr. DeSantis is the number of people involved in this incident. Ms. Stonesifer stated in an email to Jena Schulz that Mr. Greene's comments were made "in front of people in the newsroom" and that she could tell that "others were as uncomfortable as I was." (Defendant's Ex. 2, Greene Dep. Exhibit 11.) Despite these references to other witnesses, Tyler Lopez was the only other person questioned about this incident according to Mr. DeSantis. Obviously, there was no need for a full investigation if the decision had already been made to terminate, either due to his Judaism in Mr. Boxx's case or due to his age as Mr. DeSantis was inclined.

As already mentioned, *Ortiz* clarified the single issue to be addressed in deciding summary judgment motions in discrimination cases. *Ortiz* is particularly relevant to this case as the facts reviewed by and analysis employed by the Seventh Circuit provide a framework for analyzing this case. First, the *Ortiz* court utilized the facts as recounted by the Plaintiff to the extent the parties accounts diverged. As the Court stated, "The parties agree on this much, but here their stories diverge. We recount Ortiz's version, because we must view the evidence in the light most favorable to the party opposing a motion for summary judgment." *Ortiz at* 762. Second, the *Ortiz* court looked at the Plaintiff's claim that he was terminated for

conduct that was formerly acceptable and held that a reasonable jury could find that this termination was due to his supervisor's discriminatory animus. Of course, the court acknowledged that a jury could find that the employer's non-discriminatory explanation was acceptable and find in the Defendant's favor but either way the conflict on the material issues required a trial. *Ortiz at* 762.

Here, we do not have the racial epithets used in *Ortiz* but the fact that a supervisor has a greater level of sophistication does not absolve him of responsibility. Perry Boxx antagonized Mr. Greene from shortly after the time he became Mr. Greene's supervisor. Once he was confronted by Mr. Greene regarding his antagonism, this particular harassment was reduced (Plaintiff's Ex. 1, Greene Dep. 155:5-18, 185:16-188:2) But the reduction was only made in favor of the use of discipline for conduct not previously considered appropriate for discipline or even sufficient to reduce an employee's evaluation. In two separate incidents involving frustrating issues with broadcasts, Mr. Greene expressed his frustrations using profanity, as is only human. If we are pricked, we bleed, to paraphrase Shakespeare. Mr. Boxx used these situations to issue discipline rather than handling them as teaching moments as Mr. Greene's prior supervisor had.

As to Mr. Boxx's anti-Semitism, as the basis for these actions, we have his disparagement of Holocaust documentaries, his unwillingness to allow stories dealing with the Jewish faith or local Jewish experiences and most telling, his comment when Mr. Greene revealed he was 96% Ashkenazi Jewish, Mr. Boxx's comment was, "well, that's not a surprise." As Mr. Greene stated, "based on other experiences with Perry Boxx, I knew what was going on." (Defendant's Ex. 2, Greene Dep. 141:14-143:1.) We can't expect bigots to all publicly join the Klan and wear bedsheets to tell us who they are but they usually give themselves away in one way or another, and all of these incidents with Mr. Boxx show his anti-Semitism and the consequences for Mr. Greene.

Defendant tries to discount Mr. Boxx's harassment by stating that he was not

the decision-maker in the termination but Mr. DeSantis has acknowledged that Mr. Boxx was involved in the investigation into the final incident and supported the termination decision. Mr. DeSantis also acknowledges his general practice of supporting the decisions of those under him even in cases of discipline and termination, as in this case. But in this case, Mr. DeSantis had his own discriminatory basis for wanting to terminate Mr. Greene. Within a short time surrounding Mr. Greene's termination, Mr. DeSantis also terminated two other on air employees who were over 40, Gretchen and Mark by not renewing their contracts. (Plaintiff's Ex. 2, DeSantis Dep. 57:12-22.) Additionally, he moved another on air employee who was over 40, Lee Hall, to an off air position at about the same time. Finally, in Mr. Greene's case, his duties were taken over by two individuals who replaced Mr. Greene under 40. One of those individuals was referred to by Mr. DeSantis as a "kid" (Plaintiff's Ex. 2, DeSantis Dep. 63:8-9.)

## IV.  CONCLUSION

As Plaintiff has acknowledged and argued above, the evidence is insufficient for this Court to grant summary judgment for either the Plaintiff or the Defendant due to the disputed nature of much, although not all, of the evidence. Taking the evidence in the light most favorable to the Plaintiff, the non-movant in this case, there is insufficient evidence for this Court to grant summary judgment on any of the counts as requested by Defendant.

WHEREFORE, for all of the reasons stated in this Memorandum and the accompanying Motion, Plaintiff Eric Greene respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment and grant any other and further relief the Court deems just.

ERIC GREENE.
Plaintiff
JOHNSON, BUNCE & NOBLE, P.C.,

By: /s/ William W.P. Atkins
        For the Firm

## CERTIFICATE OF SERVICE

I certify that on January 5, 2021, I electronically filed the foregoing **Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Counsel of Record.

>Carrie L. Kinsella, IL #6283318
>JACKSON LEWIS P.C.
>222 S. Central Ave., Ste. 900
>St. Louis, Missouri 63105
>Tel:  (314) 827-3960
>Carrie.Kinsella@jacksonlewis.com

>/s/ *Michael J. Slomczewski*
>Paralegal

William W. P. Atkins, Attorney
Johnson, Bunce & Noble, P.C.
Executive Offices - Parkway Plaza
7800 N. Sommer St., Suite 425
Peoria, IL 61615
Phone: (309) 691-9650
Fax: (309) 691-9651
Email: watkins@peorialawyers.com
Secondary Email: service@peorialawyers.com
Firm No. 47